**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AXIS SURPLUS INSURANCE COMPANY,**

    **Plaintiff,**

-vs-                                                       **Case No. 6:11-cv-320-Orl-28DAB**

**CONTRAVEST CONSTRUCTION COMPANY, CONTRAVEST, INC., and THE CREST AT WATERFORD LAKES CONDOMINIUM ASSOCIATION, INC.,**

    **Defendants.**
_____

# ORDER

In this declaratory judgment action, Plaintiff Axis Surplus Insurance Company ("Axis") seeks a declaration that it has no duty to defend or indemnify Defendants Contravest Construction Company and Contravest, Inc. ("the Insureds") in an underlying suit brought against the Insureds by Defendant The Crest at Waterford Lakes Condominium Association, Inc. ("the Association"). (Am. Compl., Doc. 9). In turn, the Insureds have filed a Counterclaim against Axis and a Second Amended Third-Party Complaint ("Third-Party Complaint") (Doc. 121) against several other insurers, seeking a declaration regarding the various insurers' obligations to defend and indemnify the Insureds in conjunction with the underlying suit and, relatedly, the appropriate trigger for coverage with respect to the policies at issue. (Countercl. & Third-Party Compl., Doc. 121, at 11-13). Two of those Third-Party insurers–Amerisure Mutual Insurance Company ("Amerisure") and Great American

Insurance Company ("Great American")–have moved to dismiss[1] the Third-Party Complaint for lack of subject-matter jurisdiction, asserting that Contravest has not presented a justiciable issue.[2]

As discussed below, Axis's motion will be denied and the Insureds' and the Association's cross-motions will be granted because Axis has a duty to defend the Insureds in the underlying suit. Additionally, Amerisure's motion and Great American's motion will be granted because the Insureds have not presented a justicable issue as to those parties.

### I. Background

In the underlying suit, the Association brought claims against the Insureds for alleged "negligent construction and development of the individual dwelling units and common areas of The Crest at Waterford Lakes Condominium community" ("the Subject Property"). (Underlying Compl., Doc. 9-1, ¶ 1). Due to this negligence, the Subject Property allegedly

---

[1] Amerisure has filed its motion as a motion for summary judgment, but Amerisure does not actually seek a judgment. Rather, Amerisure seeks dismissal of the Third-Party Complaint for lack of subject-matter jurisdiction. The Court, therefore, construes Amerisure's motion as a motion to dismiss.

[2] This case is currently before the Court on Axis's Motion for Summary Judgment (Doc. 59), the Response (Doc. 72) filed by Third-Party Defendant Everest National Insurance Company ("Everest"), the Response (Doc. 73) filed by Third-Party Defendant Steadfast Insurance Company ("Steadfast"), the Cross-Motion for Summary Judgment and Response (Doc. 77) filed by the Insureds, the Cross-Motion for Summary Judgment and Response (Doc. 88) filed by the Association, and the Reply to the Insureds' Response (Doc. 99) filed by Axis; Great American's Motion to Dismiss or Strike Second Amended Third-Party Complaint (Doc. 125) and the Response filed by the Insureds (Doc. 130); Amerisure's Motion for Summary Judgment (Doc. 137), the Response (Doc. 141) filed by the Insureds, the Response (Doc. 143) filed by the Association, the Reply to the Insureds' Response (Doc. 150) filed by Amerisure, and the Reply to the Association's Response (Doc. 153) filed by Amerisure.

sustained severe damage, including damage caused by water intrusion. (Id. ¶ 28). The Association alleged that the defects were not readily discoverable by the Association or its members through reasonable inspection at the time of purchase and that the Association's members only became aware of the defects through the retention of construction experts. (Id. ¶ 30). Additionally, in the documents attached to the Underlying Complaint,[3] the Association states that it was prompted to retain construction experts by unit owner complaints and observations at the Subject Property. (Exs. A & B to Underlying Compl.). Experts inspected the premises and provided reports on August 26, 2008, (Ex. A to Underlying Compl.), September 20, 2008, (Ex. B to Underlying Compl.), and September 15, 2008, (Ex. C to Underlying Compl.). In each of these reports, the experts disclosed the existence of property damage.

Axis issued four commercial general liability ("CGL") policies to the Insureds beginning on July 21, 2003 and continuing through July 21, 2007, each lasting one year. (Am. Compl. ¶ 14; Countercl. at 9). Axis is currently defending the Insureds in the underlying suit based on the 2005-2006 and 2006-2007 policies under a reservation of rights. (Am. Compl. ¶ 15). Axis denied coverage under the 2003-2004 and 2004-2005 policies. (Id.). Amerisure issued a CGL policy to the Insureds effective from March 15, 2003 through September 22, 2003,[4]

---

[3] These documents are incorporated by reference into the underlying complaint.

[4] The Amerisure policy was originally written to be effective for a full year, but Amerisure notes that the policy was cancelled on September 22, 2003. (Amerisure Mot. for Summ. J., Doc. 137, at 3). Whether the policy was cancelled or not is immaterial to the Court's analysis herein.

(Amerisure Policy, Doc. 137-2, at 2),[5] and is currently participating in the defense of the underlying suit under a reservation of rights, (Amerisure Mot. for Summ. J., Doc. 137, at 4; Insureds' Resp. to Amerisure Mot., Doc. 141, at 4). Unlike Axis, however, Amerisure has not sought a judgment from this Court declaring that it has no duty to defend or indemnify the Insureds. Finally, Great American issued five excess commercial liability policies[6] to the Insureds, each effective for one year beginning on February 17, 1997 and continuing through February 17, 2002. (Great American Mot. to Dismiss, Doc. 125, at 3; Third-Party Compl. at 10; Great American Policy No. UMB 9-01-47-89-00, Doc. 125-1, at 3; Great American Policy No. UMB 9-01-47-89-01, Doc. 125-2, at 3).[7] Great American is not currently participating in the defense of the underlying suit, (see Great American Mot. to Dismiss at 11), and has not sought a declaration as to its obligations under its policies.

## II. Justiciability

In the Third-Party Complaint, the Insureds allege that all of the insurers named therein have issued reservations of rights regarding their duties to defend and indemnify the Insureds in the underlying suit and have taken inconsistent positions regarding the issues of coverage and the trigger for coverage. Specifically, the Insureds assert that there are four potential trigger theories and that there is disagreement and uncertainty in Florida law as to

---

[5] The page numbers cited for the Amerisure Policy are to the electronic filing pages.

[6] Great American only issued two separate policies, but one of those policies was renewed once and the other was renewed twice, amounting to five policy periods. (Great American Mot. to Dismiss at 3; Third-Party Compl. at 10).

[7] The page numbers cited for the Great American policies are to the electronic filing pages.

which trigger theory applies. According to the Insureds, the various insurers have latched on to this uncertainty and each insurer has adopted the trigger theory that is most beneficial to it. The Insureds have also expressed that they are unable to proceed with settlement negotiations in the underlying suit due to the uncertainty of what insurance coverage they will have and are concerned that ultimately these inconsistent positions will leave them "holding the bag," so to speak, without any insurance coverage. To resolve these concerns, the Insureds seek a judgment declaring the following: (1) each insurer's obligation to defend the Insureds in the underlying suit; (2) each insurer's obligation to indemnify the Insureds regarding the underlying suit; (3) the appropriate trigger for coverage with respect to the policies at issue; and (4) the obligation of the insurers pursuant to section 627.428, Florida Statutes to pay attorneys' fees incurred by the Insureds in filing this declaratory action. (Third-Party Compl. at 13).

Amerisure and Great American, however, assert that despite the Insureds' concerns, there is not a justiciable controversy between the Insureds and Amerisure or Great American. Amerisure contends that it has not yet denied any coverage to the Insureds and therefore no actual case or controversy exists between the Insureds. Great American, as an excess insurer, notes that its obligations, if any, are contingent and have not yet arisen. While the Court sympathizes with the Insureds, their concerns are not sufficient to create a justiciable controversy between them and Amerisure or Great American, and therefore the Third-Party Complaint must be dismissed as to Amerisure and Great American for lack of subject-matter jurisdiction.

**A. Legal Framework**

"The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)). In recognition of this limitation, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically limits jurisdiction to "actual controvers[ies]." 28 U.S.C. § 2201(a). Therefore, "[i]n all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (internal citation omitted).

Although the cases addressing the justiciability of declaratory judgment actions "do not draw the brightest of lines," Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007), Supreme Court "decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts,'" id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). Thus, "[t]he party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." Atlanta Gas Light, 68 F.3d at 414 (quoting U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991)). Furthermore, if the party's concern is the threat of future injury, "[t]here must be a substantial likelihood that the plaintiff will suffer [such] future injury:

a 'perhaps' or 'maybe' chance is not enough." Malowney, 193 F.3d at 1347. Indeed, even a "well-founded" concern is insufficient to create a justiciable controversy if it is based on speculation. Atlanta Gas Light, 68 F.3d at 415.

### B. Amerisure's Duties to Defend and Indemnify

Ultimately, the issues regarding Amerisure's duty to defend and duty to indemnify do not create justiciable controversies because Amerisure has not yet denied any coverage to the Insureds. The facts of this case are similar to those in Atlanta Gas Light, wherein the Eleventh Circuit determined there was no justiciable controversy. Id.

In Atlanta Gas Light, the insured ("AGL") was potentially liable for the cleanup of hazardous materials that its predecessor company disposed of from the mid-1800s until sometime in the 1950s. Id. at 411. AGL sent notice of this potential liability to twenty-three insurers that had issued policies to AGL's predecessor during the relevant time period. Id. at 412. The next day–before any of the insurers received the notice or had an opportunity to respond–AGL filed a declaratory judgment action against all twenty-three of the insurers to determine the extent of its insurance coverage. Id. AGL argued that even though the insurers had not yet denied its claims, they had "denied coverage to similar [insureds] under similar circumstances in the past." Id. at 415. Despite acknowledging that AGL's concern that its insurers would deny its claims was "well-founded," the court held that there was no justiciable case or controversy over the insurers' duties to defend and indemnify AGL, stating that "AGL filed its complaint as an anticipatory maneuver designed to preempt whatever actions the insurers may have taken after they received AGL's notice." Id.

Like the insurers in Atlanta Gas Light, Amerisure has not yet denied any coverage to

the Insureds. On the contrary, Amerisure is continuing to defend the Insureds in the underlying suit and does not dispute its duty to do so. The Insureds argue that there is an imminent threat of Amerisure denying coverage because Amerisure is defending the Insureds under a reservation of rights. A reservation of rights, however, is insufficient to create a substantial likelihood that the Insureds will suffer injury; it merely creates the possibility that such an injury could occur. As noted previously, this sort of "maybe" or "perhaps" chance of injury is not sufficient to create a justiciable controversy. Malowney, 193 F.3d at 1347. Like AGL, the Insureds here are attempting to preempt Amerisure's potential actions.

Furthermore, because there has been no resolution of the underlying suit, a declaration as to Amerisure's duty to indemnify is premature. Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). Thus, the potential injury from Amerisure denying a duty to indemnify the Insureds is not only contingent on Amerisure actually making such a denial but also on the resolution of the underlying suit. These contingencies make the likelihood of injury even more uncertain.

Contrary to the Insureds' assertion, the reason that the issue of Amerisure's duty to indemnify does not create a justiciable controversy is not merely that such a determination is premature but rather that Amerisure has not yet denied its duty to indemnify the Insureds and has not taken a position adverse to the Insureds. Thus, there is no justiciable controversy over whether Amerisure has a duty to defend or indemnify the Insureds.

### C. Great American's Duties to Defend and Indemnify

For similar reasons, there is no justiciable controversy over whether Great American

has a duty to defend or indemnify the Insureds.  As noted, Great American issued excess liability policies to the Insureds.  Pursuant to these policies, Great American only incurs coverage obligations when the applicable limits of the underlying insurance policies have been exhausted by payment of claims or when damages are sought for an "occurrence" that is covered by Great American's policy but not covered by any of the underlying insurance policies.  (Great American Policy No. UMB 9-01-47-89-00 at 8; Great American Policy No. UMB 9-01-47-89-01 at 7-8).  The Insureds have not alleged that either of these conditions has been met or that the Insureds have requested that Great American defend or indemnify the underlying suit and that Great American has denied any such requests.  Without such allegations, the potential that the Insureds will be injured by Great American's denial of coverage is even more uncertain than the potential of being injured by Amerisure's denial.  Not only is the potential injury from Great American contingent on both the outcome of the underlying suit and Great American actually denying the claim, but it is also contingent on the exhaustion of all underlying insurance policies.  Such a hypothetical injury does not create a justiciable controversy. See Official Creditors' Comm. of Prods. Liab. & Pers. Injury Claimants v. Int'l Ins. Co. (In re Pettibone), 121 B.R. 801, 808-09 (Bankr. N.D. Ill. 1990) (dismissing claim seeking a declaration of excess liability insurer's duties to defend and indemnify because such duties were contingent on "the meeting of the $5,000,000 limit, which has not and may never take place").

**D. Trigger for Coverage**

It appears that the Insureds' main reason for filing their Third-Party Complaint was to obtain a declaration of which trigger for coverage applies that would be binding on all of the

applicable insurers. The Insureds assert that they are being injured because the uncertainty is hindering settlement negotiations in the underlying suit. Although the Court understands the Insureds' predicament, a declaration as to the trigger for coverage under each of the policies amounts to a determination of the obligations of the insurers pursuant to those policies and, as discussed in the previous sections, there is no case or controversy regarding Amerisure's and Great American's duties under the policies. Additionally, the Third-Party Complaint only alleges that "all insurers" have taken "inconsistent" positions as to which trigger applies. The Insureds have not alleged that either Amerisure or Great American has denied coverage based on a trigger theory or even that either has taken a position adverse to the Insureds–only that the insurers disagree with one another.

Moreover, the crux of the trigger dispute is not a disagreement among the parties to this suit but uncertainty in Florida law. What the Insureds truly seek is for this Court to resolve the uncertainty in the law and analyze how Florida law would apply to the policies at issue if there were an actual dispute over coverage. This amounts to an advisory opinion and is not justiciable. See Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1316 (Fed. Cir. 2011) (noting that in order for a declaratory judgment action to be justiciable, the "court's decision must admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" and finding that "[w]ithout an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction" (quotations omitted)).

**E. Attorneys' Fees**

In the Third-Party Complaint, the Insureds additionally seek a declaration of the Insurers' obligations to pay the Insureds' attorneys' fees in connection with bringing this declaratory judgment action pursuant to section 627.428, Florida Statutes. Section 627.428(1) provides:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured . . . the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's . . . attorney prosecuting the suit in which the recovery is had.

Because this Court does not have subject-matter jurisdiction over the declaratory judgment claims against Amerisure and Great American, the Insureds have not obtained a "judgment or decree" against either Amerisure or Great American. Accordingly, the Insureds are not entitled to any attorneys' fees pursuant to section 627.428.

**III. Axis's Motion for Summary Judgment**

The dispute between Axis and the Insureds echoes the Insureds' concerns in the Third-Party Complaint; they disagree over which trigger for coverage applies and whether coverage was triggered under the Axis policies by the underlying suit.[8] The relevant policy language is as follows:

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

---

[8] Although neither the Insureds nor Axis raises the issue, the controversy regarding Axis's obligations under its policies is justiciable because Axis takes an adverse position to that of the Insureds and there is an imminent threat that Axis will deny coverage.

-11-

> (2) The "bodily injury" or "property damage" occurs during the policy period.

(CGL Coverage Form, Composite Ex. C to Doc. 9, at 6).[9] Thus, in order to trigger coverage under Axis's policy, "property damage" must have "occurred" during the policy period. The parties do not dispute that the alleged damage would constitute "property damage" under the terms of the policy. The parties disagree, however, over whether the alleged property damage "occurred" during the policy period.

Axis asserts that damage "occurs" when it is discovered and that the allegations of the Underlying Complaint indicate that the damage was not discovered until 2008, which was after the latest Axis policy expired. The Insureds and Third-Party Defendant Everest assert that damage "occurs" when it is discoverable and that, based on the allegations of the Underlying Complaint, the damages may have been discoverable during the Axis policy periods. Each of these approaches is a variation of the "manifestation" trigger theory. The Association and Third-Party Defendant Steadfast, however, argue that Florida follows the "injury-in-fact" theory, under which damage "occurs" at the moment that there is actual damage and the date of discovery is irrelevant.

As noted by the parties, the Florida Supreme Court has yet to issue an opinion on this issue, and there is disagreement among the trial courts as to which theory is correct. This disagreement stems from different interpretations of two cases–Trizec Properties, Inc. v. Biltmore Construction Co., 767 F.2d 810 (11th Cir. 1985), and Travelers Insurance Co. v. C.

---

[9] Due to the fact that several documents are a part of Composite Exhibit C to Doc. 9, the cited page numbers reference the electronic filing numbers to avoid confusion.

J. Gayfer's & Co., 366 So. 2d 1199, 1200 (Fla. 1st DCA 1979).

In Gayfer's, the court interpreted the term "occurrence" in a policy provision that read as follows: "[The Insurer] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage . . . caused by an occurrence" during the policy period. Gayfer's, 366 So. 2d at 1200. The underlying suit in Gayfer's involved allegations that the insured negligently installed a roof drainage system during the policy period, and then after the policy period expired a joint in the drainage system failed and discharged water into the building. Id. There was no discussion about when the damage occurred–it was undisputed that it occurred after the policy period expired. Id. Rather, the issue before the Gayfer's court was whether the fact that the negligent act that caused the damage occurred during the policy period was enough to trigger coverage or if the actual damage had to have occurred during the policy period. Id. at 1201-02.

To resolve this issue, the Gayfer's court looked at the definition of "property damage" contained in the policy, which stated that "property damage means the physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or . . . loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Id. at 1201 n.1. The court determined that the language of the policy was unambiguous and that the damage itself–not just the negligent act–had to occur during the policy period. Id. at 1202 ("We find . . . that the phrase 'caused by an occurrence' informs the insured that an identifiable event other than the causative

-13-

negligence must take place during the policy period."). In explaining its holding, the court stated that "[t]he term 'occurrence' is commonly understood to mean the event in which negligence manifests itself in property damage or bodily injury, and it is used in that sense here." Id. at 1202.

Thereafter, American Motorists Ins. Co. v. Southern Security Life Insurance Co., 80 F. Supp. 2d 1280 (M.D. Ala. 2000), and Auto Owners Insurance Co. v. Travelers Casualty & Surety Co., 227 F. Supp. 2d 1248 (M.D. Fla. 2002) (Report and Recommendation adopted by the district judge), were decided. In these cases, the sentence in Gayfer's mentioning the word "manifests" was interpreted to mean that Florida courts follow the manifestation trigger theory, Am. Motorists, 80 F. Supp. 2d at 1284; Auto Owners, 227 F. Supp. 2d at 1266; subsequent cases have continued to follow their lead without separately analyzing Gayfer's,[10] see, e.g., Mid-Continent Cas. Co. v. Siena Home Corp., No. 5:08–CV–385–Oc–10GJK, 2011 WL 2784200, at *3 (M.D. Fla. July 8, 2011); Frank Casserino Constr., Inc. v. CED Constr. Partners, Ltd., 721 F. Supp. 2d 1209, 1216 (M.D. Fla. 2010); Essex Builders Grp., Inc. v. Amerisure Ins. Co., 485 F. Supp. 2d 1302, 1309 (M.D. Fla. 2006). As discussed, however, the issue of when damage "occurs" in order to trigger coverage was not before the Gayfer's court–only the issue of whether a negligent act alone is sufficient to trigger damages.

---

[10] Additional cases relied on Auto-Owners and American Motorists to assume without deciding that the manifestation theory was applicable when the ultimate issue of the case did not turn on what theory applied. United Nat'l Ins. Co. v. Best Truss Co., No. 09-22897-CIV, 2010 WL 5014012, at *5 n.4 (S.D. Fla. Dec. 3, 2010); Assurance Co. of Am. v. Lucas Waterproofing Co., 581 F. Supp. 2d 1201, 1207 (S.D. Fla. 2008).

-14-

This issue was succinctly explained by the Texas Supreme Court in a similar case as follows:

> We also note that decisions sometimes cited as following the manifestation rule, and which indeed use a form of the word "manifest" in their analysis, do not actually follow the manifestation rule as opposed to the [injury-in-fact] rule, because they were not concerned with latent damage where these two rules diverge. Instead, these cases merely hold that the time of the injury or damage, as opposed to the time of the alleged negligent conduct that caused the injury, is the triggering event under the policy. These cases, when carefully reviewed, may actually be more aligned with the [injury-in-fact] rule than with the manifestation rule, and appear to use a form of the verb "manifests" merely as a synonym for "results in" or "leads to," rather than drawing a distinction between the actual occurrence of damage and the later discovery or obviousness of damage.

Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 20, 27 (Tex. 2008). Indeed, Don's Building Supply specifically referenced Gayfer's as a case that has been improperly cited to support the manifestation theory, stating that while "[t]he [Gayfer's] court did state that an 'occurrence' under the policy 'is commonly understood to mean the event in which negligence manifests itself in property damage or bodily injury,'" when the case is "read in context" it is clear that "the court was not adopting the manifestation rule in lieu of the injury-in-fact rule, but was distinguishing between the date of the insured's alleged negligent work, which occurred during the policy period, and the date of the property damage, which occurred and became immediately evident upon occurrence, after the policy period had expired." Id. at 27 n.26. The Don's Building Supply court also noted that after Gayfer's was decided, "[t]he Eleventh Circuit . . . held that the injury-in-fact rule applies to CGL policies under Florida law" in Trizec. Id.

Trizec, unlike Gayfer's, did address the issue of when damage occurs in order to

trigger coverage.  In Trizec, a roof deck was negligently installed, causing water intrusion damage.  767 F.2d at 812.  The policy at issue in Trizec was very similar to the one at issue here and required the insurer to cover "property damage . . . caused by an occurrence."  Id. (emphasis removed).  Property damage was then defined in part as "physical injury to or destruction of tangible property occurring during the policy period."  Id. (quotation omitted).  Like the policy at issue here, the physical injury or destruction of tangible property had to occur during the policy period in order to trigger coverage.

The Trizec court interpreted this language as requiring an injury-in-fact analysis, stating that "the damage itself . . . must occur during the policy period for coverage to be effective" and that "[t]here is no requirement that the damages 'manifest' themselves during the policy period" in order to trigger coverage.  Id. at 813.  Although the court did limit its holding to the specific terms of the policy before it, id. n.6 (refusing to determine whether the manifestation theory was correct in all situations, but holding that the theory was "incompatible with the language of the policy at issue"), that does not change the outcome of this case.  As discussed, the policy at issue here and the one in Trizec are materially similar, and therefore, the analysis in Trizec is applicable here.[11]  Pursuant to the particular

---

[11] The lower courts that have adopted the manifestation theory have attempted to distinguish Trizec.  In Siena Home and Best Truss, the courts asserted that because Trizec only addressed the duty to defend and not the duty to indemnify, the analysis in Trizec did not apply.  Siena Home, 2011 WL 2784200, at *3 n.9; Best Truss, 2010 WL 5014012, at *5 n.4.  In those cases, however, no explanation was provided for why one trigger theory should be used for determining a duty to defend while another should be used for determining the duty to indemnify.  Nevertheless, this case involves the duty to defend, so Trizec clearly applies. Other cases have perhaps misconstrued the statement in Trizec limiting its analysis to the policy before it to disregard Trizec's analysis altogether.  See, e.g., Frank Casserino, 721 F. Supp. 2d at 1216.  As discussed in the text, the language of the policy in Trizec is

-16-

policy language at issue and the binding analysis of Trizec, this Court will apply the injury-in-fact trigger theory.

Under Florida law, whether there is a duty to defend is determined by the facts and legal theories alleged in pleadings against the insured. Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995) (citations omitted). "The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage." Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen.l Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993). The Underlying Complaint suggests that the damage occurred at some point after the buildings were completed but before the experts inspected the property. This time period includes the time that Axis's policies were in effect, and therefore Axis has a duty to defend the Insureds in the underlying suit.

Moreover, even if the manifestation theory were applicable, Axis would still have a duty to defend the Insureds. Even under Axis's strict interpretation of the manifestation theory–that property damage "manifests" when it is discovered–the Underlying Complaint potentially brings the suit within coverage. While the Underlying Complaint states that the extent of the damage was discovered by expert inspections, it is also alleges that those inspections were triggered by observations and complaints from owners. Based on these allegations, the observations and complaints must have taken place prior to the expert inspection and therefore the damages may have been discovered during the time that the Insureds were covered by an Axis policy. Again, these allegations are sufficient to determine

---

very similar to that of the policy at issue here; therefore, the fact that Trizec may not apply to all insurance policies does not negate its application here.

that Axis has a duty to defend the Insureds in the underlying suit.

While Axis has a duty to defend, a decision as to its duty to indemnify is premature. Except where there is no duty to indemnify for want of a duty to defend, "an insurer's duty to indemnify is dependent on the outcome of a case, [and] any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." Northland Cas. Co., 160 F. Supp. 2d at 1360 (citations omitted). Thus, Axis's request for a declaration that it has no duty to indemnify will be denied without prejudice to reassertion after the underlying suit is resolved.

## **IV. Conclusion**

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 59) filed by Axis is **DENIED** as to Axis's duty to defend in connection with the underlying suit and **DENIED without prejudice** as to Axis's duty to indemnify in connection with the underlying suit;

2. The Cross-Motion for Summary Judgment (Doc. 77) filed by Contravest Construction Company and Contravest, Inc. and the Cross-Motion for Summary Judgment (Doc. 88) filed by the Association, Inc. are **GRANTED**;

3. It is hereby declared that Axis Surplus Insurance Company has a duty to defend Contravest Construction Company and Contravest, Inc. in connection with *The Crest at Waterford Lakes Condominium Association, Inc. v. Contravest, Inc., et al.*, Case No. 2009-CA-5348 (9th Jud. Cir. Orange County, Fla.).

4. The Motion to Dismiss or Strike Second Amended Third-Party Complaint (Doc. 125) filed by Great American is **GRANTED** insofar as it seeks dismissal and **DENIED as**

**moot** insofar as it seeks to strike the Second Amended Third-Party Complaint. The Second Amended Third-Party Complaint (Doc. 121) is **DISMISSED without prejudice** as to Great American Insurance Company for lack of subject-matter jurisdiction;

5. The Motion for Summary Judgment (Doc. 137) that this Court construed as a motion to dismiss filed by Amerisure is **GRANTED**. The Second Amended Third-Party Complaint (Doc. 121) is **DISMISSED without prejudice** as to Amerisure Mutual Insurance Company for lack of subject-matter jurisdiction;

6. If the Insureds can remedy the jurisdictional defects, they may file a Third Amended Third-Party Complaint **on or before Tuesday June 19, 2012**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 5th day of June, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party